# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Criminal Action No.: 5:16–CR–14
                                                   (JUDGE BAILEY)

JEFFERY L. SELLS, Jr.,

        Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR A *FRANKS* HEARING
## AND
## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION TO SUPPRESS STATEMENTS BE DENIED

## I. INTRODUCTION

On August 3, 2016, came the United States of America ("the Government"), by counsel, Assistant United States Attorney Stephen L. Vogrin, Esq., and Jeffery L. Sells, Jr. ("Defendant"), in person, and by counsel, Assistant Federal Public Defender Brendan S. Leary, Esq., to be heard on Defendant's motions.

Defendant filed two motions in this matter: (1) a Motion to Suppress Statements; and (2) a Motion to Suppress Evidence Pursuant to *Franks v. Delaware*. ECF Nos. 26 & 28. At the outset of the hearing, the Court noted that the Defendant bears the burden to establish he is entitled to a *Franks* hearing by making the requisite showing, and it is the Government's burden on the Motion to Suppress Statements.

The Court began with Defendant's Motion for a *Franks* hearing. Defendant called Sergeant Donald Alan DeWitt as his only witness and submitted two exhibits. The Government did not call any witnesses for this portion of the hearing, but it did have one exhibit admitted.

Next, the Court heard testimony and received exhibits on Defendant's Motion to Suppress Statements. The Government called two witnesses, Lieutenant Steven P. Kosek and Chief Thomas Mitchell, and had two exhibits admitted. Defendant called no witnesses.

## II. BACKGROUND

The Government's prosecution arises out of an incident that occurred on June 15, 2015, in Moundsville, West Virginia. That evening police responded to a call regarding a man, later identified as Scott Beveridge, who was bleeding from his head. Mr. Beveridge told Moundsville Police Corporal Brittany Earnest ("Cpl. Earnest") that he had been beaten and robbed while at a nearby house. He told Cpl. Earnest that the people who robbed him took all of the money he and his friend, Britni Bartnicki, had in his truck. When asked where Ms. Bartnicki was, Mr. Beveridge told Cpl. Earnest that the people who robbed him would not let her leave the house.

Cpl. Earnest then went to the area of the house where Mr. Berveridge alleges the robbery occurred. Once there, she reported seeing Defendant, two females, and another male walking across the street. Upon asking the individuals for their names, one indicated that her name was Britni. Cpl. Earnest spoke with everyone involved, and later obtained written statements from each of them, except Defendant. Ms. Bartnicki's statement indicated that Defendant was upset and accused Mr. Beveridge of taking money, and she did not see anything. However, she does claim that "Scott was beat up by people. I did not watch, I only heard." ECF No. 34-2 at 9.

Cpl. Earnest's narrative indicates that when asked who beat up Mr. Beveridge, Defendant replied by asking if Cpl. Earnest knew why they beat him up. *See* ECF No. 34-3. According to her narrative, Cpl. Earnest explained that was her reason for being there and

2

talking with them–to find out what happened. *Id.* Defendant then told Cpl. Earnest that Mr. Beveridge stole from him. *Id.* He said that he and his father, Jeffery Sells, Sr., confronted Mr. Beveridge about money Defendant believed was taken, got into an altercation, and then forcefully made him leave.

Mr. Beveridge's account of what transpired is markedly different from Defendant's, as reported in Cpl. Earnest's narrative and in his written statement. Mr. Beveridge claims that he did not steal from Defendant. Mr. Beveridge also alleged that he was pistol whipped from behind. He asserts in his statement that he was then beaten and forced outside, while his friend was held against her will inside the house.

The next morning, Sergeant DeWitt prepared an application and affidavit for a search warrant of Defendant's residence. While the warrant was being prepared, Lieutenant Kosek and Chief Mitchell drove by Defendant's residence, which Lieutenant Kosek testified was done to take a photograph of the home to include with the application for a search warrant.

At that time, Mr. Sells, Sr. was sitting on the front porch and made eye contact with Lieutenant Kosek, who testified that he had interacted with and arrested Mr. Sells, Sr. on several prior occasions. This prompted the officers to stop and make contact with Mr. Sells, Sr., and at that time, they escorted Mr. Sells, Sr. inside the residence, and told the other occupants, including Defendant, to exit and stay on the front porch until the search warrant arrived. This took place at approximately 9:52 AM. While on the front porch awaiting the arrival of a search warrant, Defendant made incriminating statements to Lieutenant Kosek regarding the purchase and origin of several firearms inside his residence. Around 11:05 AM, a search warrant issued by the county magistrate was presented at Defendant's

3

residence. Subsequently, Defendant and his father were arrested.

## III. DEFENDANT'S MOTIONS AND THE GOVERNMENT'S RESPONSES

a. Defendant's Motion to Suppress Evidence Pursuant to *Franks v. Delaware*

Defendant seeks to have "all evidence seized from the search of the defendant's residence and all evidence that flows directly from that illegal search" suppressed. ECF No. 28 at 6. In support of his contention, Defendant asserts that the affidavit "contains material omissions." *Id.* at 2. Specifically, Defendant notes that "the affidavit entirely omits the contrary statements made by Jeffrey Sells, Sr. and Mariah Fazen as to what occurred the day before. The statements of Jeffrey Sells, Sr. and Ms. Fazen paint a completely different picture . . . ." *Id.*

The thrust of Defendant's argument is that Sgt. Dewitt, the officer who prepared the affidavit, not only left out the statements made by Mr. Sells, Sr. and Ms. Fazen, but also neglected to inform the magistrate that any conflicting statements even existed.

b. Government's Response

The Government takes the position that Defendant has not made the requisite showing to be entitled to a *Franks* hearing. Citing *United States v. Jeffus*, the Government points out that "heavy . . . is [the defendant's] burden in establishing the need for a hearing[.]" 22 F.3d 554, 558 (4th Cir. 1994). "[A] *Franks* hearing is only warranted if '(1) the defendant makes a substantial preliminary showing that a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit, and (2) the defendant shows that the false information was essential to the probable cause determination.'" ECF No 31 (quoting *United States v. Sassani*, No. 97-4011, 1998 WL 89875, at *2 (4th Cir. Mar. 4, 1998)).

The Government argues that Defendant failed to show that the affiant intended to mislead the magistrate by omitting information. Further, the Government asserts that it is of no consequence because had the omitted information been included, there would still be probable cause. Therefore, it argues that this Court should deny Defendant's Motion.

c. Defendant's Motion to Suppress Statements

Defendant asks this Court to "suppress the statements he made to law enforcement because they were the fruit of the poisonous tree in that the statements were made during an unlawful seizure and detention." ECF No. 26. Defendant argues that "it is a violation of the Fourth Amendment for law enforcement officers to go to a residence before a search warrant has been issued, and secure the residence and the people located therein in anticipation that the search warrant will be issued and arrive thereafter." *Id.* at 3.

Defendant cites *United States v. Watson* to support his position that a defendant's statement, when made during an unlawful detention, should be suppressed. 703 F.3d 684 (4th Cir. 2013). Even though the defendant in *Watson* had received two *Miranda* warnings, that "did not purge the 'taint of the unlawful custodial arrest." ECF No. 26 at 5 (quoting *Watson* at 687). Defendant further argues that his detention was not supported by independent probable cause.

d. The Government's Response

In contrast, the Government asserts that the police officers' conduct was lawful. Specifically, the officers "had sufficient probable cause to believe the defendant was involved in criminal activity, therefore, his temporary detention was reasonable and in compliance with the Fourth Amendment." ECF No. 32 at 16. The Government further argues that Defendant's temporary detention was not only reasonable, but also necessary.

As such, it asks the Court to deny Defendant's Motion.

## IV. DISCUSSION

a. Defendant has not met the requisite burden for a *Franks* hearing

For a defendant to be entitled to a *Franks* hearing, he must make a "dual showing . . . which incorporates both a subjective and an objective threshold component. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Generally, *Franks* applies to false statements included in affidavits for warrants. However, in *Colkley*, the Fourth Circuit applied *Franks* to omissions.

To meet the test set forth in *Colkley*, a defendant must demonstrate that (1) the omission is the product of a deliberate falsehood or of a reckless disregard for the truth, and (2) inclusion of the omitted information in the affidavit would defeat probable cause. *Id.* The *Colkley* Court noted that an affiant need not include all potentially exculpatory evidence in the affidavit, and "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." *Id.* at 301.

Here, Defendant argues that he is entitled to a Franks hearing because Sergeant DeWitt omitted information with reckless disregard for whether it would make the affidavit misleading. In fact, Defendant claims that "[t]he affidavit in this case was completely misleading." ECF No. 28 at 4. This Court disagrees.

The Court finds that the information Defendant argues was omitted from the affidavit is not the product of a deliberate falsehood or of a reckless disregard for the truth. Defendant presented no evidence to the Court to lead it to any other conclusion.

The police officers found a man, Mr. Beveridge, on the street bleeding from the head.

At another location, they made contact with Ms. Bartnicki. As the Government points out, and this Court agrees, their statements corroborate each other–as do Mr. Beveridge's injuries.

Although the Court's inquiry could end because Defendant has failed to meet his burden on the first prong of the test under *Colkley*, it will nonetheless consider the second prong. Contrary to Defendant's argument, including the statements by Ms. Fazen and Mr. Sells, Sr. would not destroy a probable cause finding. Probable cause to search has been described by the Supreme Court as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Even including the other two statements, the affidavit would still support a probable cause finding.

Therefore, because Defendant has failed to meet his burden under *Colkley*, he is not entitled to a *Franks* hearing, and, accordingly, his Motion for such is hereby **DENIED**. ECF No. 28.

b. <u>Defendant's Motion to Suppress Statements should be denied</u>

Defendant argues that the statements he made to police while detained on his front porch were in violation of his Fourth Amendment rights, and as such, ought to be suppressed. As an initial matter, the Government does not contest that Defendant's temporary detention was a seizure, and therefore, protected by the Fourth Amendment. However, the Government claims that the seizure was lawful because it was supported by sufficient probable cause and exigent circumstances.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

"Hostility to seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment, and decisions immediately after its adoption affirmed that 'common rumor or report, suspicion, or even strong reason to suspect was not adequate to support a warrant for arrest.'" *Dunaway v. New York*, 442 U.S. 200, 213 (1979) (quoting *Henry v. United States*, 361 U.S. 98, 100 (1959)). "[T]o argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment. Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry." *Davis v. Mississippi*, 394 U.S. 721, 726 (1969).

However, "an exception to the warrant requirement is made when certain exigent circumstances exist." *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir. 2001). Exigent circumstances permit the warrantless entry and control of property while a search warrant is obtained; warrantless detention or control of individuals associated with property while a search warrant is obtained; and detaining a suspect while a search warrant was being executed in order to prevent flight and protect law enforcement officers. *See Cephas*, 254 F.3d 488 (4th Cir. 2001); *Illinois v. McArthur*, 531 U.S. 326 (2001); *Michigan v. Summers*, 452 U.S. 692 (1981).

The Fourth Circuit laid out the proper analysis courts should undertake when determining whether such circumstances existed in *United States v. Turner*, 650 F.2d 526 (4th Cir. 1981). "These include: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is

about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband." *Id.* at 528 (citing *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)).

Here, the officers testified that they went by the residence to take a photograph to include with the application for a search warrant. At that time, the Defendant's father, who knew the officer, made direct eye contact. This event prompted the officers to stop and make contact because they were concerned that the occupants of the house would know the police were actively coming after them. The officers testified to their concern for their own safety if they were to leave and come back or stay outside the house until the warrant was obtained. From the time the officers made contact with Mr. Sells, Sr., to the time the search warrant arrived was little over an hour. During that time, the officers stayed on the porch, outside the residence, with Defendant and the other occupants. The Government offered no evidence to show that the officers were concerned that any evidence would be easily removed or destroyed.

Accordingly, the Court finds that, under *Turner*, factors one, three, and four were met in this case. Conversely, factors two and five are not even remotely at issue in this case. The Defendant in this case had allegedly beaten and robbed a man using a firearm. Officers testified that the Defendant's father was well known to them and had a lengthy criminal history.

The Court concludes that, under the circumstances presented here, the police officers reasonably believed that "the possessors of the contraband" were aware that the police were "on their trail" and that there was a possibility of danger to police guarding the

site. Their actions, under the situation, took care to not be overly intrusive. The officers stayed out on the front porch with the occupants after removing them from the residence.

In addition to exigent circumstances, the officers' seizure must also be supported by probable cause. "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). "Probable cause exists where the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)) (internal quotations omitted).

Here, there can be no question that the officers had probable cause to believe that a crime had been committed in Defendant's residence. Mr. Beveridge's statement that he was pistol whipped, beaten, and robbed; his injuries; Ms. Bartnicki's statement that she saw a gun in Defendant's waistband and cleaned up blood on the floor; and Officer Earnest's report indicating that when asked who beat up the male around the corner, Defendant responded by asking the Officer if she "knew why they beat him up." ECF No. 32-1. The Court finds that the police officers had probable cause to believe that a crime was committed at Defendant's residence and that evidence of that crime might be found therein.

## V. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that Defendant's

Motion to Suppress Statements be **DENIED**. ECF No. 26.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record.

Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

**Dated**: August 18, 2016                    /s/ *James E. Seibert*
                                              JAMES E. SEIBERT
                                              U.S. MAGISTRATE JUDGE