**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                      **CRIMINAL NO. 5:16-CR-14-1**
                                                            **(Judge Bailey)**

**JEFFREY L. SELLS, JR.,**

    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION
THAT DEFENDANT'S MOTION TO SUPPRESS STATEMENTS BE DENIED**

Pending before this Court is the Order Denying Defendant's Motion for a ***Franks*** Hearing and Report and Recommendation that Defendant's Motion to Suppress Statements be Denied ("Order/R&R") [Doc. 35] issued by Magistrate Judge James E. Seibert on August 18, 2016. This Court, having reviewed defendant's Motion to Suppress Statements [Doc. 26], defendant's Motion to Suppress Evidence Pursuant to ***Franks v. Delaware*** [Doc. 28], the Government's Responses to the Motion to Suppress Evidence and Motion to Suppress Statements [Docs. 31 & 32], the Report and Recommendation/Opinion [Doc. 35], defendant's Objections to Report and Recommendation/Opinion [Doc. 36], the transcript of the August 3, 2016, Motions Hearing held by Magistrate Judge Seibert as to these motions, and all exhibits to the above referenced motions and responses, now finds that the R&R should be adopted for the reasons set forth below.

As a preliminary matter, this Court notes that the motions to suppress stem from the

1

execution of a search warrant at defendant Sells' property at 121 Grant Avenue, Moundsville, Marshall County, West Virginia on June 16, 2015. This Court will not further set out the facts, inasmuch as the facts are thoroughly set forth in the Report and Recommendation and are not contested.

## Defendant's Objections

**I.     Motion to Suppress Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)**:

Defendant Sells first objects to Magistrate Judge Seibert's conclusion that defendant did not meet the requisite showing under ***Franks***. Defendant's objections primarily center on the notion that Moundsville Police Department Sergeant Donald A. Dewitt, the officer who applied for and received a search warrant for defendant's residence, omitted items from the application which, "constituted a deliberate falsehood or a reckless disregard for the truth, thus making the affidavit misleading" [Doc. 36 at 2-3]. Before discussing defendant's objections further, this Court notes that in his application for the search warrant, Sergeant Dewitt provides:

> ON JUNE 15 AT 1827 HOURS OFFICERS OF THE MOUNDSVILLE POLICE DEPARTMENT RESPONDED TO A REPORT OF A MALE WHO WAS ALLEGING HE HAD BEEN BEATEN UP AND ROBBED IN A HOUSE ACROSS FROM THE FUNERAL HOME. THE HOUSE WAS LATER FOUND TO BE AN APARTMENT AT 121 GRANT AVENUE. THE MALE WAS IDENTIFIED AS SCOTT BEVERAGE. BEVERAGE HAD VISIBLE BLEEDING INJURIES ABOUT THE HEAD AND FACE. HE ALLEGED THAT HE AND HIS FRIEND BRITNI WERE AT THE RESIDENCE AT 121 GRANT AVENUE. HE STATES THAT HE WAS GETTING READY TO LEAVE THE RESIDENCE AND WENT OUTSIDE TO TURN HIS TRUCK AROUND AND PICK UP HIS FRIEND BRITNI. HE STATES THAT BRITNI DID NOT COME OUT OF THE RESIDENCE. HE STATES HE THEN WENT BACK INSIDE WHERE HE WAS STRUCK FROM BEHIND WITH A GUN AND HE FELL TO THE FLOOR WHERE HE WAS BEATEN AND STRIPPED. HE STATED JEFF JR. HELD HIM AT GUN POINT WHILE JEFF SR. WENT OUT TO BEVERIDGES TRUCK AND STOLE HIS MONEY. HE CLAIMS TO HAVE

> HAD $275.00 IN HIS TRUCK. HE CLAIMS THAT JEFF SELLS SR. AND JEFF SELLS JR. WERE ACCUSING HIM OF STEALING MONEY. HE STATES THAT HE WAS THEN THROWN OUT OF THE HOUSE. HE STATED THAT HE ASKED THEM TO LET BRITNI LEAVE AND THEY REFUSED TO DO SO. THE FRIEND, BRITNI BARTNICKI, WAS LATER INTERVIEWED SHE CLAIMED NOT TO HAVE SEEN THE INCIDENT BUT SHE CLAIM THAT THEY MADE HER CLEAN UP THE BLOOD OF SCOTT BEVERAGE. SHE ALSO ADVISED THAT SHE HAD SEEN AN OUTLINE OF A GUN IN JEFF SELLS JR.'S WAISTLINE. THE GUN WAS DESCRIBED AS A GLOCK OR UZI TYPE GUN.

[Doc. 28-1 at 2]. In his Objections, defendant notes that at the evidentiary hearing, he presented the testimony of Sergeant Dewitt, who "admitted that he simply did not include any contrary information about the alleged assault" [Doc. 36 at 3]. Defendant further contends that, Sergeant Dewitt, "admitted that he did not include any information about the written statements of Jeffery Sells, Sr., and Mr. Sells' then girlfriend, Mariah Fazen, in his narrative that he submitted to the issuing magistrate" [Id.]. As noted in his Motion to Suppress on this issue, these statements purportedly, "paint a completely different picture and point instead to the alleged victim, Scott Beveridge, committing the initial theft and becoming aggressive with Mr. Sells and his father" [Doc. 28 at 2]. Defendant contends that, "[Sergeant Dewitt] did not want to give the entire picture to the magistrate because he knew that if he did, the warrant would not be issued. These officers wanted to search that residence and they were going to get that warrant come Hell or high water" [Doc. 36 at 3]. He further contends that if those statements had been included as part of the affidavit, it would not have supported probable cause [Id. at 4-5].

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In **Franks**, "the Supreme Court developed a two-prong test clarifying what a criminal defendant must show when

3

challenging the veracity of statements made in an affidavit supporting a search warrant. If both prongs are met, the search warrant must be voided and the fruits of the search excluded." *United States v. Lull*, 824 F.3d 109, 113-114 (4th Cir. 2016). While *Franks* generally applies to false statements included in affidavits for warrants, in *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990), the Fourth Circuit applied *Franks* to cases where agents omit relevant facts from the affidavit. To meet the test set forth in *Colkley*, a defendant must demonstrate that: (1) the omission is the product of a deliberate falsehood or of a reckless disregard for the truth; and (2) inclusion of the omitted information in the affidavit would defeat probable cause. *Id.* The *Colkley* Court noted that an affiant need not include all potentially exculpatory evidence in the affidavit, and in the context of an omission, a Fourth Amendment violation occurs only where "affiants omit[ted] material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Id.* at 300-301. This Court will examine each prong of the *Colkley* test in turn.

First, as to the intentionality prong, defendant has not shown that the omission of the written statements of Jeffery Sells, Sr., and Mr. Sells' then girlfriend, Mariah Fazen, in the warrant application was, "the product of a deliberate falsehood or of a reckless disregard for the truth." In his Objections, defendant offers no supporting evidence which would indicate that Sergeant Dewitt's omission was the product of either of these categories. Indeed, defendant notes that, "[w]hen pressed on why he failed to include this contrary information, Sergeant Dewitt did not have an answer. He off-handedly testified that he was in a hurry and did not include it" [Doc. 36 at 3]. However, this meager

4

testimony cannot possibly carry defendant's "heavy burden" in establishing the intent prong needed for a *Franks* hearing. **United States v. Jeffus**, 22 F.3d 554, 558 (4th Cir. 1994). This Court further notes that it has independently reviewed the transcript of defendant's questioning of Sergeant Dewitt and finds nothing in that testimony which would establish the intent element called for by ***Colkley***. Indeed, Sergeant Dewitt testified that he, "didn't include information from [the written statements of Jeffery Sells, Sr., and, Mariah Fazen], because they were rather incomplete" [Motions Hearing Transcript of August 3, 2016 at 31]. He specifically noted that Fazen "[did not] really see anything, [she] just hear[d] screaming then [went] down to check [on the source of the scream]," so Sergeant Dewitt did not think that her statement was, "of major importance" [Id.]. He further indicates that because Jeffery Sells, Sr., did not describe how or why Mr. Beveridge was beat up, he did not feel that statement was of major importance for the search warrant either [Id.]. Neither of these points in any way indicate that Sergeant Dewitt had an improper motive in excluding those statements from the affidavit. Defendant only offers the conclusory allegation that, "Sergeant Dewitt's omissions easily lead to the conclusion that these statements were withheld improperly and with reckless disregard for the truth" [Doc. 36 at 3]. Accordingly, defendant has not met his burden as to the first prong of the ***Colkley*** test.

Additionally, the inclusion of all or part of the Sells Sr. and Fazen statements would not have defeated probable cause. In his objection, the defendant contends that, if the contrary statements were included in the affidavit, "it would not have lead the issuing magistrate to conclude that probable cause still existed" [Doc. 36 at 4]. As noted in the R&R, the Supreme Court has described probable cause as to whether, "there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The evidence presented indicates that the police found Scott Beveridge on the street and bleeding from his head [Doc. 32-1]. He described in detail how he sustained the injury while in the Sells' residence, and was beaten, stripped, and eventually robbed while there [Id.]. Additionally, as noted in the affidavit, Bartnicki represented that the Sells' "made her clean up the blood of Scott Beverage," and that she saw, "an outline of a gun in Jeff Sells, Jr.'s waistline" [Doc. 28-1; see also Id.]. Accordingly, this compelling narrative and written evidence indicates that probable cause would have existed even with the contrary statements. As such, defendant has not carried his burden in satisfying prong two of *Colkley*.

In conclusion and for the reasons stated above, defendant has not met his burden in demonstrating that he should be entitled to a *Franks* hearing. Accordingly, his Objections to the contrary are **OVERRULED**.

II.     **Motion to Suppress Statements:**

Next, in his Motion to Suppress Statements [Doc. 26], defendant contends that the statement he made to police while temporarily detained on his front porch were in violation of his Fourth Amendment rights, and should, in turn, be suppressed. In his Objections, he argues that the R&R incorrectly concluded that, "Mr. Sells' seizure and detention was justified by exigent circumstances and that the seizure and detention was also permissible because it was supported by probable cause" [Doc. 36 at 5]. This Court will first address defendant's objection as to probable cause.

Defendant contends that there was, "no probable cause present such that the

6

officers could seize and detain Mr. Sells while the warrant was being secured" [Doc. 36 at 7]. He further contends that, "[t]here was serious and profound confusion with the circumstances surrounding the alleged assault the evening before. Thus, this confusion and lack of consensus makes any finding of probable cause at the very least questionable, and likely untenable. The entire investigation surrounding the assault leads to only one conclusion here: there were two versions of the alleged assault." [Id.]. However, defendant's objection is misplaced.

At the outset, this Court notes that the Government does not debate that defendant was subject to a temporary seizure which was, in turn, protected by the Fourth Amendment [Doc. 32 at 5-6]. In general, a seizure is "reasonable" only if it is supported by probable cause, even if no formal arrest is made. See **Michigan v. Summers**, 452 U.S. 692, 696 (1981), citing **Dunaway v. New York**, 442 U.S. 200, 213-214 (1979). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." **Brinegar v. United States**, 338 U.S. 160, 175 (1949). "Probable cause exists where the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." **Draper v. United States**, 358 U.S. 307 (1959) (quoting **Carroll v. United States**, 267 U.S. 132, 162 (1925)) (internal quotations omitted). ". . . [T]he substance of all definitions of probable cause is a reasonable belief of guilt." **Maryland v. Pringle**, 540 U.S. 366, 371 (2003) (quoting **Ybarra**

*v. Illinois*, 444 U.S. 85, 91 (1979)) (internal citations omitted).

The officer's decision to temporarily detain defendant in this case was certainly supported by probable cause. First, as noted above, Moundsville police discovered the victim, Scott Beveridge, bleeding from his head while standing by the side of the road, which provided the first indication that an assault took place [Doc. 32-1]. Officer Earnest took a statement from Scott Beveridge, who indicated that he was assaulted and robbed by defendant [Id.; Doc. 32-2]. Scott Beveridge and Bartnicki had a pawn receipt which indicated that the money allegedly taken by defendant belonged to Beveridge and Bartnicki, not defendant [Doc. 32-2]. Further, Bartnicki's statement also corroborates Beveridge's, given that she saw the aftermath of the alleged assault and robbery, and was made to clean up Beveridge's blood [Doc. 32-1]. Finally, when Officer Earnest questioned defendant, Jeffrey Sells, Sr., and the other parties, they asked her if she knew, "why [they] beat him up" [Id.]. Later in the same conversation, defendant stated that Beveridge would not leave his residence, so the Sells' "beat him up and forcefully made him leave the residence" [Id.]. Therefore, defendant admitted on two separate occasions that he assaulted Beveridge. Even if Beveridge stole money from defendant, that does not give defendant leave to violently attack or allegedly rob Beveridge. Accordingly, there was clear probable cause that defendant was involved in criminal activity.

It is also clear that exigent circumstances were present in this matter, which, in turn, justified the temporary detention. When officers have probable cause and exigent circumstances are also present, the Fourth Circuit has previously held that officers may detain occupants of a building while a warrant is obtained and executed. *See **United***

*States v. Cephas*, 254 F.3d 488, 495-496 (4th Cir. 2001) (holding that law enforcement officers who made a justified warrantless entry into an apartment and detained eight or nine occupants while a search warrant was obtained were justified in so doing). Additionally, in *Illinois v. McArthur*, 531 U.S. 326, 337 (2001), the Supreme Court held that exigent circumstances justified officers preventing a man from entering his home unless unaccompanied by an officer for about two hours while they obtained a search warrant, lest evidence of marijuana use be potentially destroyed. In *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981), the Fourth Circuit outlined the five factors to consider as to whether exigent circumstances existed in a given situation: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband." For his part, defendant argues that exigent circumstances were not present in this matter [Doc. 36 at 6-7].

However, as the R&R correctly noted, Officer Steven Kosek testified that he and Police Chief Tom Mitchell drove to the Sells' residence in an unmarked police vehicle to better describe the residence and to take a photograph of it to include with the application for a search warrant [Doc. 32-3; Motions Hearing Transcript of August 3, 2016 at 50-51, 88]. At that time, defendant's father, who knew Officer Kosek, made direct eye contact with them while he was seated on the porch of the residence smoking a cigarette [Id.; Id. at 51-52, 88]. Given that the officer believed that the defendant's father recognized him,

Office Kosek elected to make contact with him, because he was concerned that the occupants of the house would know the police were actively coming after them, which, in turn, implicated the safety of the officers [Id.; Id., 88-89]. Once they arrived at the residence, Jeffrey Sells, Sr., "let them in" by opening the front door [Motions Hearing Transcript of August 3, 2016 at 54]. The officers then directed Jeffrey Sells, Jr., and Jeffrey Sells, Sr., to wait with them on the porch until they had an arrest warrant out of fear for their safety and to ensure that evidence was not destroyed [Id. at 57, 89]. As such, because the officers had probable cause to believe that a crime was committed and exigent circumstances were present, defendant's temporary detention was justified and the Motion to Suppress Statements is without merit.

As an additional matter, defendant contends that the R&R, "never addresses a critical, recent and on-point published opinion from the Fourth Circuit that addresses the very factual and legal situation presented in this case," **United States v. Watson**, 703 F.3d 684 (4th Cir. 2013). In **Watson**, the Fourth Circuit concluded that a suspect's three hour seizure in a building open to the public, at a time when a search warrant had not been authorized was unreasonable. *Id.* at 699. In support of his argument that **Watson** should be applied to this case, defendant contends that the facts of this case are very similar to the facts set forth **Watson**, because defendant was held and detained until the search warrant was obtained, made incriminatory statements during this allegedly unlawful detention, and he was given his **Miranda** warnings while he was detained [Doc. 36 at 6]. However, defendant fails to note that **Watson** involved facts that were, "highly unusual, if not unique," because they, again, included "the three-hour detention of an individual, whom

the police encountered in a building open to the public, at a time when a search warrant had not been authorized. During the entire course of that three-hour detention, the police had no reason to believe that the detained individual was linked to any criminal activity, including the evidence sought in the search warrant application." 703 F.3d at 690. The Court in *Watson* also concluded that there was no probable cause or exigent circumstances to justify the officer's search. *Id.* at 689-690.

Here, as noted above, the officers had probable cause to temporarily seize the defendant. However, even if there was no probable cause to temporarily seize the defendant, the reasoning of *Watson* would still not apply to his case. First, Officer Steven Kosek testified that he and Police Chief Tom Mitchell went to the Sells' residence to obtain a description of the residence and to take a photograph to include with the application for a search warrant [Doc. 32-3; Motions Hearing Transcript of August 3, 2016 at 50-51, 88]. At that time, defendant's father, who knew Officer Kosek, made direct eye contact with them while he was seated on the porch of the residence smoking a cigarette [Id.; Id. at 51-52, 88]. Given that the officer believed that the defendant's father recognized him, Officer Kosek elected to make contact, because he was further concerned that the occupants of the house would know the police were actively coming after them [Id.; Id., 88-89]. Once they arrived at the residence, Jeffrey Sells, Sr., "let them in" by opening the front door [Motions Hearing Transcript of August 3, 2016 at 54]. The officers then directed Jeffrey Sells, Jr., and Jeffrey Sells, Sr., to wait with them on the porch until they had an arrest warrant out of fear for their safety and to ensure that evidence was not destroyed [Id. at 57]. The officers initially made contact with Jeffrey Sells, Sr., at 9:52 a.m., on June 16,

2015, and other officers arrived with a search warrant at approximately 11:05 a.m. [Id. at 60]. During that time, the officers stayed on the porch, outside the residence, with Defendant and the other occupants [Id. at 59-60]. The facts in this matter are a far cry from those seen in *Watson*. The police here held defendant and his father for a little over an hour, as opposed to the three hour period in *Watson*. Officers Kosek and Mitchell encountered Jeffrey Sells, Sr., while he was sitting on his porch, and detained him there, not in a public place as was the case in *Watson*. Finally, during the entire encounter in this matter, a search warrant was being prepared. The same cannot be said of the scenario seen in *Watson*. As such, defendant's reliance on *Watson* is misplaced.

## Conclusion

For the reasons stated above, and for the reasons more fully stated by the magistrate judge, this Court hereby **ADOPTS** the Order Denying Defendant's Motion for a *Franks* Hearing and Report and Recommendation that Defendant's Motion to Suppress Statements Be Denied **[Doc. 35]**. The defendant's Objections **[Doc. 36]** are **OVERRULED**. Accordingly, the defendant's Motions to Suppress Statements **[Doc. 26]** and Motion to Suppress Evidence Pursuant to *Franks v. Delaware* **[Doc. 28]** are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit certified copies of this Order to all counsel of record.

**DATED**: September 8, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE